824 A.2d 60

Cortney BRYANT

v.

STATE of Maryland.

No. 9, Sept. Term, 2002.

Court of Appeals of Maryland.

May 12, 2003.

588

Amy E. Brennan, Julia Doyle Bernhardt, Asst. Public Defenders (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

Appellant, Cortney Bryant, was convicted by a jury in the Circuit Court for Baltimore County of first-degree premeditated murder, robbery with a deadly weapon, and conspiracy to commit robbery with a deadly weapon. He elected a court sentencing proceeding. Death was the sentence. In so doing, the court found: (1) beyond a reasonable doubt that Bryant was a principal in the first degree to the murder; (2) beyond a reasonable doubt the aggravating circumstance that Bryant committed the murder while attempting to commit a robbery; and, (3) by a preponderance of the evidence the mitigating circumstances that (i) Bryant previously had not been found guilty of a crime of violence and (ii) that his actions were not the sole proximate cause of the victim's death.

The non-constitutional issues raised in this appeal regarding the establishment, consideration, and balancing of aggravating and mitigating factors at sentencing, and specifically the asserted, but rejected, mitigating factor of youthful age, are the

only issues we need address as their disposition renders it unnecessary for us to reach the remaining issues. We conclude that, although the trial judge properly recognized or rejected many of the offered mitigating factors, he erred by not finding by a preponderance of the evidence that youthful age was a mitigating circumstance and, consequently, his ultimate weighing of the aggravating versus the mitigating factors was inadequate. A new sentencing proceeding, therefore, is required.

## I.

### A.

### THE CRIMES

On the night of 23 December 2000, twenty-one year old James Stambaugh was working as night manager at the Burger King restaurant on York Road in Hunt Valley. Following standard procedures, the restaurant's doors were locked at 10 p.m. and the night staff, Stambaugh, William Jones, and Denard Carver, began cleaning the restaurant. As he was performing his cleaning tasks, Carver received a telephone call from Bryant, a former employee of the restaurant who had been fired the previous month, asking to speak to Jones. Carver suspected what was to follow and promptly left the restaurant.[1] Shortly after Carver left, Bryant, Andre Lawson, and Breon English,[2] entered the restaurant through the door opened for them by Jones. Bryant carried a blue duffle bag containing a roll of tape and other miscellany.

---

1. Carver testified at trial that he was approached by Bryant earlier that month and asked to open a door of the Burger King after hours so that Bryant could rob the restaurant. Carver did not think Bryant was serious the first time he broached this subject, but, when approached a second time with the same request, Carver declined to play a role.

2. Cortney Bryant was born on 23 July 1982, making him eighteen years and five months old at the time of the crime. Lawson and English were both sixteen years old at the time.

Although the plan was to surprise Stambaugh, tape his hands and eyes, and put him in the back office while Bryant, Lawson, and English took the money, as the three crept around a counter inside the restaurant, one of them knocked over a broom, prematurely alerting Stambaugh to their presence. At trial, English testified that Bryant and Lawson then struggled with Stambaugh in the restaurant's office. The fight continued outside the restaurant to an area near the trash dumpsters. Lawson and Bryant repeatedly struck Stambaugh with a heavy metal door stopper and an oil shuttle.[3] Bryant removed from Stambaugh's pocket the keys to his car and began to walk away. Lawson and English pointed out that Stambaugh was still moving. Bryant returned to Stambaugh and hit him on the head again, commenting that if Stambaugh was not killed he would be able to identify Bryant because Stambaugh knew him from his prior employment at the restaurant. Only when Stambaugh stopped moving did the three flee the scene in Stambaugh's car.

When the day manager arrived the next morning, he found that the alarm was not on and that there were signs of ransacking. He called the police. The investigating police officer discovered Stambaugh's body by the dumpsters where he had died from the blood loss resulting from injuries suffered during the beating inflicted by Lawson and Bryant. The day manager also found approximately $2800.00 missing from the restaurant.

## B.

### THE TRIAL

Bryant's trial commenced on 4 December 2001 before a jury in the Circuit Court for Baltimore County, the State having notified him previously that it would seek the death penalty. On 11 December 2001, the jury convicted Bryant of first-degree premeditated murder, robbery with a deadly weapon,

---

3. The oil shuttle was described at trial as a metal dolly used to transport grease from the fryers to the grease barrels in the dumpster area.

and conspiracy to commit robbery with a deadly weapon. Bryant elected a court sentencing proceeding which commenced on 31 January 2002.

At sentencing, the defense called several witnesses. Dr. Randall Nero, the Associate Director of Behavioral Sciences at the Patuxent Institution, and Dr. Robert Johnson, an expert in the field of social psychology of prison life and adjustment, testified as to the type of treatments available for young inmates in the Division of Correction and the way in which inmates with life sentences typically adjust to incarceration. Dr. Johnson opined that, based on Bryant's institutional adjustment to that point in time, Bryant was not likely to engage in criminal activities in jail nor was he likely to constitute a threat to prison society. The defense presented other witnesses who described Bryant's childhood, an upbringing allegedly fraught with physical and sexual abuse. Dr. Janice Stevenson, a licensed psychologist, concluded after evaluating Bryant that he suffered from chronic and severe post traumatic stress disorder as a result of the traumatic events of his childhood.[4] Dena Leibowitz, an expert in substance abuse and addictions, concluded after evaluating Bryant that he met the criteria for alcohol dependence and cannabis and cocaine abuse.

At the conclusion of the sentencing phase, the judge found that Bryant and Lawson were joint and concurrent principals in the first degree to murder and that the State had proven beyond a reasonable doubt a single statutory aggravating circumstance—that Bryant committed the murder while committing a robbery. *See* Maryland Code (1957, 1996 Repl.Vol.),

---

4. Among the events described were the loss of his birth father by the time he was one year old and the death of a father figure at eleven years of age. He received substantial physical abuse from an early age that included severe beatings administered by his mother using variously sticks, brooms, a hammer, and a plastic baseball bat, whippings with an extension cord, and on one occasion threatening him with a knife. He was abused sexually by numerous care givers. His school attendance was chronically poor, with attendant low grades. He did not complete high school.

Article 27, § 413(d)(10).[5] The court then considered whether

5. The statutory provisions governing homicide have been revised without substantive change, effective 1 October 2002, in Title 2 of the new Criminal Law Article. Article 27, § 413 has been recodified as Maryland Code (2002), Criminal Law Article, § 2–202, § 2–303, § 2–304, § 2–305. Article 27, § 414 has been recodified at § 2–401 of the Criminal Law Article. We will refer in this opinion to the provisions by the section numbers in effect at the time of Bryant's trial and sentencing.

Section 413 governed the sentencing procedures upon finding a defendant guilty of first-degree murder:

(a) *Separate sentencing proceeding required.*—If a person is found guilty of murder in the first degree, and if the State had given the notice required under § 412(b), a separate sentencing proceeding shall be conducted as soon as practicable after the trial has been completed to determine whether he shall be sentenced to death.

(b) *Before whom conducted.*—This proceeding shall be conducted:

(1) Before the jury that determined the defendant's guilt; or

(2) Before a jury impaneled for the purpose of the proceeding if:

(i) The defendant was convicted upon a plea of guilty;

(ii) The defendant was convicted after a trial before the court sitting without a jury;

(iii) The jury that determined the defendant's guilt has been discharged by the court for good cause; or

(iv) Review of the original sentence of death by a court of competent jurisdiction has resulted in a remand for resentencing; or

(3) Before the court alone, if a jury sentencing proceeding is waived by the defendant.

. . . .

(d) *Consideration of aggravating circumstances.*—In determining the sentence, the court or jury, as the case may be, shall first consider whether, beyond a reasonable doubt, any of the following aggravating circumstances exist:

(1) One or more persons committed the murder of a law enforcement officer while in the performance of his duties;

(2) The defendant committed the murder at a time when he was confined in any correctional institution;

(3) The defendant committed the murder in furtherance of an escape or an attempt to escape from or evade the lawful custody, arrest, or detention of or by an officer or guard of a correctional institution or by a law enforcement officer;

(4) The victim was taken or attempted to be taken in the course of a kidnaping or abduction or an attempt to kidnap or abduct;

(5) The victim was a child abducted in violation of § 2 of this article;

(6) The defendant committed the murder pursuant to an agreement or contract for remuneration or the promise of remuneration to commit the murder;

(7) The defendant engaged or employed another person to commit the murder and the murder was committed pursuant to an agreement or contract for remuneration or the promise of remuneration;

(8) At the time of the murder, the defendant was under sentence of death or imprisonment for life;

(9) The defendant committed more than one offense of murder in the first degree arising out of the same incident; or

(10) The defendant committed the murder while committing or attempting to commit a carjacking, armed carjacking, robbery under § 486 or § 487 of this article, arson in the first degree, rape or sexual offense in the first degree.

. . . .

(f) *Finding that no aggravating circumstances exist.*—If the court or jury does not find, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall state that conclusion in writing, and a sentence of death may not be imposed.

(g) *Consideration of mitigating circumstances.*—If the court or jury finds, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall then consider whether, based upon a preponderance of the evidence, any of the following mitigating circumstances exist:

(1) The defendant has not previously (i) been found guilty of a crime of violence; (ii) entered a plea of guilty or nolo contendere to a charge of a crime of violence; or (iii) had a judgment of probation or stay of entry of judgment entered on a charge of a crime of violence. As used in this paragraph, "crime of violence" means abduction, arson in the first degree, escape in the first degree, kidnapping, manslaughter, except involuntary manslaughter, mayhem, murder, robbery, carjacking or armed carjacking, or rape or sexual offense in the first or second degree, or an attempt to commit any of these offenses, or the use of a handgun in the commission of a felony or another crime of violence.

(2) The victim was a participant in the defendant's conduct or consented to the act which caused the victim's death.

(3) The defendant acted under substantial duress, domination or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution.

(4) The murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder or emotional disturbance.

(5) The youthful age of the defendant at the time of the crime.

(6) The act of the defendant was not the sole proximate cause of the victim's death.

(7) It is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society.

(8) Any other facts which the jury or the court specifically sets forth in writing that it finds as mitigating circumstances in the case.

(h) *Weighing aggravating and mitigating circumstances.*—(1) If the court or jury finds that one or more of these mitigating circumstances exist, it shall determine whether, by a preponderance of the evidence, the aggravating circumstances outweigh the mitigating circumstances.

(2) If it finds that the aggravating circumstances outweigh the mitigating circumstances, the sentence shall be death.

there were any mitigating circumstances, in accordance with Art. 27, § 413(g). Based on the parties' stipulation that Bryant had no prior conviction for a crime of violence, the court found by a preponderance of the evidence that statutory mitigating circumstance existed. The defense urged the court to find three other statutory mitigating circumstances: the youthful age of the defendant at the time of the crime, the act of the defendant was not the sole proximate cause of the victim's death, and the unlikelihood that the defendant would engage in future criminal activity that would constitute a continuing threat to society. Art. 27, § 413(g)(5), (6), and (7). The court found by a preponderance of the evidence that Bryant was not the sole proximate cause of Stambaugh's death, but rejected youthful age and lack of future dangerousness.

The sentencing judge's explanation of his determinations as to the asserted mitigators was as follows:

As the Court indicated in its prior ruling, the Court has found that the Defendant is a principal in the first degree.... Therefore, the Court then goes to the aggravating circumstances and the Court does find that it has been proved beyond a reasonable doubt, Aggravating Circumstance No. 10, the Defendant committed the murder while committing or attempting to commit armed carjacking, ... Then in Section Four, the mitigating circumstances, the Court does find that Defendant has not previously been found guilty of a crime of violence. So, the Court finds, by a preponderance of the evidence, that the above circumstances exist.

The next is No. 5, whether or not the Defendant was a youthful age at the time of the crime. Case law states that this is not a pure chronological age approach and that the Court must evaluate other factors in determining whether or not a defendant is of a youthful age. The Court has defined those factors as, which would include prior criminal

---

(3) If it finds that the aggravating circumstances do not outweigh the mitigating circumstances, a sentence of death may not be imposed.

conduct—the Defendant's home environment, his marital status, degree of maturity, alcohol and drug abuse, among other factors relative to the concept of youthful age. On the evidence that the Defendant, in his home environment as of age 16, he dropped out of school, he came and went as he pleased. It appears, as to his marital status, he had a live-in girlfriend. There has been some testimony of his alcohol and drug abuse. However, it's no testimony that his alcohol and drug abuse had an impact on what happened on the day of this particular crime.

His degree of maturity. In this particular case, the Court finds that he was the mastermind of this particular crime. He knew that he needed other cohorts, that he needed an inside man to open the door. He approached one young man and that man declined the invitation to be involved. He then approached a second, who agreed. He also needed a lookout. So he had Breon English along for that. And he needed another strong-arm man, so he had Andre Lawson. That showed to me his degree of maturity, not only this particular crime, but also in life, itself. . . . The Court finds, because of the factors outlined, that he is not of a youthful age.

No. 6 that the Defendant was not the sole proximate cause of the victim's death. The court finds, by preponderance of the evidence, that the above circumstance does exist, but its existence has a de minimis impact on the Court's decision. And that is because although he was not the sole proximate cause of Mr. Stambaugh's death, as the Court indicated, he was a joint and concurring cause and his hand, as well as Mr. Lawson's hand, wielded the blows that killed Mr. Stambaugh. So that factor does exist.

The next factor is No. 7, whether or not it was unlikely that Defendant would engage in further criminal activity that would constitute a continuing threat to society. Now, the testimony of Dr. Johnson tried to make society penal society. But that's not what the statute says. And the statute is written that persons that are charged under this particular statute are going to get either three penalties—

either life, life with the possibility of parole, life without the possibility of parole—or death. And if the statute meant that the Court was to look to penal society to make a determination as to whether or not he was going to be a threat to penal society only, then it would say so. But the question is whether or not, if, once he got out, he would be a threat then, as well as penal society. And I don't think that the defense in this case has met their production and therefore the Court does not find that circumstance exists.

The Defense has asked this Court to find nonstatutory circumstances, whether or not he's amenable to treatment, was amenable to rehabilitation, and they have alleged and testimony has been taken, that he is suffering from post-traumatic stress syndrome and that with treatment he could overcome that. But in this particular case it appears that the post-traumatic stress syndrome would have made him frightened, that he would be afraid, and that he was afraid of his codefendants in this case. But he was not afraid of his codefendants in this case, because he was the leader of the codefendants in this case. And if anybody was afraid, it would have been Will and Breon. And, so, to establish that his amenability to treatment is contrary to the facts as I know in this case and I find in this case—so, I decline to find that as a factor.

No prior criminal record. Well, I think the statute has laid out that the question is whether or not he has a prior conviction of a crime of violence. And then many of those who are eighteen years of age would not have any prior criminal record. But he does have a juvenile record, even though it's de minimis. So I don't believe that as the statute is written, that no prior criminal record is something that is a mitigating circumstance in this particular case.

Much of what the Defense is asking me to find in terms of nonstatutory circumstances are part of the statute that makes up our death penalty laws, and that includes the disparate prosecution of Defendant and codefendant. Well, a statute says that if one is 18 years of age, then they fall under Article 27, Section 413. And if one is below that age,

then he does not or she does not. That's the statutory construction to which I am bound.

The same with the Sentencing Guidelines. The Sentencing Guidelines don't apply to Article 27, Section 413—the proportionality of the sentence. It's the same thing. Those who are under 18 can only be sentenced to a particular sentence. Those over 18 can be sentenced to more. That's what the General Assembly has decided is the law of this State, and to that I am bound.

. . . .

And so the only factor of significance—because, as the Court has indicated, that the factor of sole proximate cause is de minimis, and the Court has explained why it feels that way—that the only factor to be weighed is No. 1, and that is that you have not previously been found guilty of a crime of violence. And under the statute, if the State has proven by a preponderance of the evidence that the aggravating circumstances marked proven in Section Three outweigh the mitigating circumstances, then the sentence is death. And it's a matter of 51 percent, and that is the only factor that the Court feels can be weighed in your favor and the Court does not feel that it reached that level.

The court returned a sentence of death as to first-degree premeditated murder, and imposed consecutive twenty-year sentences of imprisonment as to each of the other two convictions. The court stayed the death sentence pending appellate review. This case is before us pursuant to Art. 27, § 414 [6] and

---

**6.** Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 414 (Automatic review of death sentences) provided:

(a) *Review by court of Appeals required.*—Whenever the death penalty is imposed, and the judgment becomes final, the Court of Appeals shall review the sentence on the record.

(b) *Transmission of papers to Court of Appeals.*—The clerk of the trial court shall transmit to the Clerk of the Court of Appeals the entire record and transcript of the sentencing proceeding within ten days after receipt of the transcript by the trial court. The clerk also shall transmit the written findings and determination of the court or jury and a report prepared by the trial court. The report shall be in the form of a standard questionnaire prepared and supplied by the Court

Maryland Rule 8–306(c)(1).[7]

of Appeals of Maryland and shall include a recommendation by the trial court as to whether or not imposition of the sentence of death is justified in the case.

. . . .

(e) *Considerations by Court of Appeals.*—In addition to the consideration of any errors properly before the Court on appeal, the Court of Appeals shall consider the imposition of the death sentence. With regard to the sentence, the Court shall determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or court's finding of a statutory aggravating circumstance under § 413(d); and

(3) Whether the evidence supports the jury's or court's finding that the aggravating circumstances outweigh the mitigating circumstances.

. . . .

7. Rule 8–306. *Capital cases—Review in Court of Appeals.*

(a) Scope. This Rule applies to appellate proceedings in cases in which a sentence of death was imposed, including direct appeal, an application for leave to appeal from a judgment granting or denying relief in a post conviction proceeding brought to review a judgment imposing a sentence of death, and an application for leave to appeal from an order determining the competence or incompetence of an inmate upon whom a sentence of death was imposed.

(b) Applicability of other rules. Except as otherwise expressly or by necessary implication provided in this Rule, the other rules of this Title apply to appeals and applications for leave to appeal under this Rule. In the event of a conflict between this Rule and another rule in this Title, this Rule shall prevail.

(c) Automatic appeal from judgment. (1) Whenever a sentence of death is imposed there shall be an automatic appeal to the Court of Appeals of both the determination of guilt and the sentence, whether or not the determination of guilt was based on a plea of guilty.

(2) The clerk of the circuit court shall enter on the docket a notice of appeal on behalf of the defendant within 10 days after the later of (A) entry of the judgment, or (B) entry of a notice withdrawing a timely motion for new trial filed pursuant to Rule 4–331(a) or an order denying the motion. The clerk shall promptly notify the Attorney General, the defendant, and counsel for the defendant of the entry of the notice of appeal.

(3) Unless the parties have elected to proceed in accordance with Rule 8–413(b), the clerk upon docketing the notice of appeal, shall direct the court stenographer to prepare a transcript of both the trial and sentencing proceedings in conformance with Rule 8–411(a). Within 10 days after receipt of the transcript, the clerk shall transmit the record to the Clerk of the Court of Appeals. The statement of costs required by Rule 8–413(c) shall separately state the cost applicable to the sentencing proceeding. The State shall pay those costs.

## II.

## A.

### THE ISSUES

Appellant presents eight questions for our consideration; however, we find that one of the first three questions alone disposes of the appeal and therefore decline to address the remaining ones. We address the following questions, although two we do so solely to aid the court and the parties at the new sentencing:

I. Did the lower court properly weigh aggravating and mitigating circumstances?

II. Did the lower court apply the correct legal standard in assessing mitigating circumstances?

III. Did the lower court err in failing to find youthful age at the time of the crime as a mitigating circumstance? [8]

---

(4) The Court of Appeals shall consider (A) those issues concerning the sentence required by Code, Criminal Law Article, § 2–401(d) and (B) all other issues properly before the Court on appeal and necessary to a decision in the case.

. . . .

**8.** The remaining issues raised by Appellant are as follows:

IV. Does the Maryland capital-sentencing scheme violate the Sixth and Fourteenth Amendments to the Constitution of the United States and Articles 21 and 24 of the Maryland Declaration of Rights?

V. Does the record show that appellant's waiver of a jury sentencing was knowing and voluntary?

VI. Did the trial court abuse its discretion in refusing to permit appellant to make a pre-trial election to be sentenced by the court, where the death-qualifying voir dire resulted in the exclusion of a disproportionate number of African–American potential jurors?

VII. Was the sentence of death imposed under the influence of passion, prejudice, or other arbitrary factors, and does the evidence support the trial court's finding that the aggravating circumstances outweigh the mitigating circumstances?

VIII. Is the Maryland capital-sentencing scheme cruel and unusual and does it violate due process?

## B.

### THE ARGUMENTS

Bryant argues initially that the circuit court committed three particular errors during the actual weighing process in which it engaged: first, the trial judge reversed the burden of proof; second, the court was inappropriately mechanistic in reaching its judgment; and finally, the court entirely failed to weigh one of the mitigating circumstances it found to exist.

The court expressed its weighing of the aggravating circumstance against the mitigating circumstances as follows:

> And so the only factor of significance—because, as the Court has indicated, that the factor of sole proximate cause is de minimis, and the Court has explained why it feels that way—that the only factor to be weighed is No. 1, and that is that you have not previously been found guilty of a crime of violence. And under the statute, if the State has proven by a preponderance of the evidence that the aggravating circumstances marked proven in Section Three outweigh the mitigating circumstances, then the sentence is death. And it's a matter of 51 percent, and that is the only factor that the Court feels that it reached that, that level.

Bryant alleges that by requiring the mitigating circumstances to rise to the level of 51% in order to outweigh the aggravating circumstance, the court effectively reallocated the burden of proof from the prosecution to the defense. Section 413(h) establishes that it is the State's burden to prove that the aggravating circumstances outweigh the mitigating circumstances. *See Scott v. State,* 310 Md. 277, 529 A.2d 340 (1987). Bryant contends that the trial judge's statement, that Appellant had not satisfied the court that mitigating circumstances rose to the level of 51%, was a "gross distortion" of the statutory standard to his prejudice. *See Maziarz v. State,* 302 Md. 1, 6, 485 A.2d 245, 247 (1984) (finding that the standard applied by the trial court, that "death is said to be 'mandated' unless the mitigating circumstances are 'overwhelming' ... grossly distorts the statute to prejudice the accused").

Bryant further insists that the court's use of the 51% figure in weighing the aggravating and mitigating factors represents a kind of mechanistic counting criticized by this Court in *Jones v. State*, 310 Md. 569, 600–01, 530 A.2d 743, 758–59 (1987), *vacated on other grounds*, 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988). The jury in that capital sentencing proceeding found two aggravating circumstances, but no mitigating circumstances. 310 Md. at 600, 530 A.2d at 758. Pursuant to directions on the verdict sheet suggesting that it was not necessary to engage in the weighing process unless both aggravating circumstances and mitigating circumstances were found to exist, the jury in *Jones* imposed the death sentence. *Id.* Although Jones argued that, based on the statutory sentencing scheme and the court's instructions, the death sentence imposed on him was unconstitutionally made mandatory, we observed that the trial judge's instructions to the jury admonished them against "mechanically tabulating the aggravating versus the mitigating factors; any confusion that may possibly have arisen was thereby cured." *Jones*, 310 Md. at 600–01, 530 A.2d at 758–59. Bryant argues here that he was entitled to a reflective and thoughtful balancing of aggravating and mitigating circumstances, rather than a mechanical tabulation.

Bryant also faults the trial judge for failing to give any weight to the mitigating factor that he was not the sole proximate cause of Stambaugh's death and therefore argues that he is entitled, on that basis alone, to a new sentencing hearing.

The State retorts that Bryant bases his contentions on a misreading of the sentencing court's statements, pertinently noting our description of the balancing process in *Foster v. State*, 304 Md. 439, 477–78, 499 A.2d 1236, 1255 (1985), *cert denied*, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984): "[t]he 'preponderance of the evidence' test is normal when a court is weighing one set of circumstances against another. Ordinarily in such a balancing process, a court simply determines which side outweighs the other, without being concerned with how much or how clearly one side may outweigh

the other." The State claims that the sentencing judge considered the aggravating circumstance and the proven mitigating factors and properly engaged in a weighing process to reach his conclusion. The State notes that the court clearly articulated that the State had the burden of proof in the weighing process. The court's remark regarding the statutory mitigating factors, in the State's view, referred to the defense's burden of establishing mitigating factors, and did not assume that the defense had any burden in the weighing process. Likewise, the State contends that the 51% reference did not signal that the judge engaged in a mere mathematical or mechanical weighing process, but rather was nothing more than a nod in the direction of the slight tilt necessary to establish a factor by a preponderance of the evidence. *See Baker v. State,* 367 Md. 648, 693, 790 A.2d 629, 656 (2002) (stating that " '[o]utweighing' begins when a balance is 'tipped,' however slightly"), *cert denied,* 535 U.S. 1050, 122 S.Ct. 1814, 152 L.Ed.2d 817 (2002). The State suggests that the sentencing judge's comments more accurately should be interpreted to mean that the one mitigator that was significant, that Bryant had not previously been convicted of a crime of violence, was not enough to tip the scales even slightly in his favor. A full reading of the court's explanation of its findings on the verdict sheet, the State contends, demonstrates a reflective and thoughtful balancing of mitigating and aggravating factors. The State additionally faults Bryant's reliance on *Maziarz* and *Jones.*

## C.

Bryant's second claim is that the lower court did not apply the correct legal standard in its analysis of the asserted statutory mitigating circumstance of the likelihood that the defendant will engage in further criminal activity that would constitute a continuing threat to society [9] and the asserted

---

**9.** Maryland Code, (1957, 1996 Repl.Vol.), Article 27, § 413(g)(7) provides that if the sentencing body finds that one or more aggravating circumstances exist beyond a reasonable doubt, "it shall then consider

non-statutory mitigating circumstances of: (1) the disproportionate sentences of appellant and his codefendant Lawson; (2) Bryant's lack of a prior criminal record; and (3) Bryant's drug abuse and post-traumatic stress disorder. Bryant asserts generally that the Supreme Court has held that the Eighth Amendment requires consideration of all statutory and non-statutory mitigating factors when considering a sentence of death. *See Hitchcock v. Dugger*, 481 U.S. 393, 394, 107 S.Ct. 1821, 1822, 95 L.Ed.2d 347, 350 (1987) (finding that the sentencing court's failure to consider non-statutory mitigating circumstances required reversal of the death sentence and remand for new sentencing proceedings); *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1, 6–7 (1986) (remanding for new sentencing where the sentencing judge refused to consider good behavior in jail as relevant evidence mitigating punishment); *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1, 8 (1982) (holding that the sentencing judge's refusal to consider appellant's abusive childhood was error requiring remand for a new sentencing hearing).

To support establishment of the statutory mitigator that it is unlikely Bryant will engage in further criminal activity constituting a threat to society, Bryant offered testimony at sentencing by Dr. Nero about the Patuxent Institution's Youth Program which helps participants "adjust more effectively to the stresses of incarceration."[10] Dr. Johnson, an expert in penology and the social psychology of prison life and adjustment, testified that inmates serving life or life without parole sentences are less of a danger to others in the prison community than inmates serving shorter terms. Dr. Johnson concluded that Bryant so far had adjusted to prison life well, was

---

whether, based upon a preponderance of the evidence, any of the following mitigating circumstances exist: ... [i]t is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society."

**10.** He furthered testified that inmates receiving a sentence of life without parole are not eligible for the program.

amenable to rehabilitation due to his youth, and would not likely constitute a threat within prison society based on reasons personal to Bryant and on the general peaceableness of inmates serving life sentences.

The sentencing court concluded that the defense had not met its burden of production and therefore the mitigating circumstance that it is unlikely that Bryant would engage in further criminal activity that would constitute a continuing threat to society did not exist on this record. The judge reasoned that the plain language of the statute requires evaluation of the potential threat a defendant would pose to society as a whole. The testimony Bryant offered addressed only whether he would be a threat to *prison* society. The court found this to be limited inappropriately because the other potential sentences Bryant could receive, in lieu of the death sentence, were life with the possibility of parole or life without the possibility of parole. Only one of the alternatives would require Bryant actually to spend the rest of his life as an inmate.

Bryant alleges that, when deciding between death and life without parole, the relevant society to consider for the purposes of this particular mitigator is the inmate society. He contends that any threat of future dangerousness is greatly decreased if the court considered the sentence of life without parole and the failure to consider this option was erroneous. He supports this argument with two Supreme Court cases, *Kelly v. South Carolina*, 534 U.S. 246, 122 S.Ct. 726, 151 L.Ed.2d 670. 534 U.S. 246, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002), and *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994); and two Maryland cases, *Bruce v. State*, 318 Md. 706, 569 A.2d 1254 (1990), *cert denied*, 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993), and *Doering v. State*, 313 Md. 384, 545 A.2d 1281 (1988). He argues that these cases collectively stand for the proposition that, when the court has the option to sentence a defendant to life without the possibility of parole, a fair evaluation of the defendant's future dangerousness requires the court to consid-

er the defendant's risk to the prison population, not his risk to society at large.

The State replies that Bryant misread the record in concluding that the court inappropriately refused to consider this proffered mitigating circumstance. The State, peering at the sentencing judge's remarks through a different facet of the linguistic prism, offers an alternative interpretation—that the court found that Bryant, by addressing strictly the potential of his future dangerousness to the prison society, said nothing about any other segment of society and therefore did not establish that he would not constitute a continuing threat to society as a whole. The State further argues that Bryant incorrectly limited his assessment of the relevant society to be that within prison walls. There were three options available to the court during sentencing, including life without parole, and therefore the court had to consider whether there was any evidence that Bryant would be a threat to society either in or outside of the penal system. By stressing the low risk of future dangerousness to the prison community, Bryant's arguments only addressed one of the three sentencing options, that of life without parole.[11] The State concludes that the sentencing court did not hold that parole eligibility was not a proper consideration in assessing whether Bryant posed a threat to society, but rather found that what the defense presented did not fully address the future dangerousness issue to the extent that the court must recognize it as a proven statutory mitigator. In any event, it was within the court's discretion, says the State, to give as little or as much weight as it deemed appropriate to the evidence presented relative to Bryant not being a threat in a prison, whether viewed as a statutory or non-statutory mitigator.

Bryant next contends that the trial court improperly established limitations on the non-statutory mitigating circum-

---

11. We note that Dr. Nero testified that the Patuxent Youth Program was *not* available to inmates sentenced to life without parole. This suggests that the defense implicitly urged that a lesser sentence than life without parole would be appropriate, but failed to address the risk Bryant would pose to the outside world if released from prison on parole.

stances that may be considered, pursuant to Art. 27, § 413(g)(8) which provided that the court "shall consider" whether there are "[a]ny other facts which the jury or the court specifically sets forth in writing that it finds as mitigating circumstances in the case." Any non-statutory mitigating factors tendered by a defendant, therefore, should be weighed against the aggravating factor(s).

Bryant alleges that the sentencing court erred by not considering as a mitigating circumstance that Andre Lawson was not exposed to the sentence of death to which Bryant was vulnerable, although they were found to be joint principals in the first degree. Even though Art. 27, § 412(g) provided for different treatment of offenders under eighteen years of age,[12] Bryant contends that the judge was incorrect to conclude that the law precluded him from considering the disproportionate sentences that may result when a sixteen year old and an eighteen year old commit a crime together and are equally culpable.

The sentencing judge also found that Bryant's lack of a prior criminal record was not a mitigating circumstance pursuant to Art. 27, § 413(g)(1). Bryant contends that it was prejudicial error for the court not to consider his lack of a prior criminal record and *de minimis* juvenile record as non-statutory mitigating circumstances because, although § 413(g)(1) applies specifically to a *prior conviction for a crime of violence*, Bryant also argued *lack of a prior criminal record* which is not covered by that provision of the statute.

According to Bryant, the sentencing court also erred in failing to find his substance abuse and post-traumatic stress disorder to be mitigating circumstances. The court based its refusal to consider these two factors on the reasoning that there was no evidence that either of them affected Bryant at

---

**12.** Section 412(g) provides that "if a person found guilty of murder in the first degree was, at the time the murder was committed, less than 18 years old ... the person shall be sentenced to imprisonment for life or imprisonment for life without the possibility of parole and may not be sentenced to death."

the time he committed the crime. This is an erroneous standard to apply, Bryant argues, because the sentencing body is instructed to consider any fact relating to the offender which makes the death sentence less appropriate. There is no requirement, Bryant asserts, that mitigating circumstances have a direct causal or temporal relation to the crime.

In sum, Bryant urges us to find that the lower court erroneously construed the enumerated statutory mitigating circumstances as limiting or constraining the catchall non-statutory circumstances provided for by § 413(g)(8). The court's construction was incorrect as a matter of statutory interpretation and because it violated the Eighth Amendment.

Regarding the disproportionate "cap" on sentencing options as between Bryant and Lawson, the State contends that the sentencing judge properly recognized that the disparity was a result of the fact that Lawson was under the age of eighteen at the time the crime was committed and the maximum sentence for him by statute was life without parole. The disparity therefore was not relevant in determining the appropriate sentence for Bryant.

The court, the State continues, did not preclude the lack of a prior criminal record from consideration as a mitigating factor. The court considered the absence of an adult record, and noted the existence of a relatively minor juvenile record, but concluded that the lack of an adult criminal record did not amount to a mitigating factor under the particular facts of this case. Bryant had turned eighteen only a few months before committing the crimes which are the subject of this case and it was therefore not of particular significance that he otherwise did not have an adult record at that point.

The State also argues that the sentencing court did consider the evidence offered to demonstrate Bryant's drug use and alleged post-traumatic stress disorder. After such consideration, however, the court found that drug use would not be recognized as a mitigating factor because there was no evidence of drug use at the time of the crime. The court was also within its discretion, according to the State, to discount

the opinion evidence that Bryant suffered from post-traumatic stress disorder.

### D.

Bryant volleys that the lower court erred in failing to find youthful age at the time of the crime to be a mitigating circumstance. The death penalty may not be imposed on a person under eighteen years of age at the time he or she commits the crime. § 412(g). Bryant postulates that the eighteen years of age limit establishes a "floor" below which the death penalty cannot be imposed. Given that he was only eighteen years and five months old at the time of the crime, Bryant maintains that he is entitled to a finding that youthful age was a mitigating circumstance as a matter of law.

Relying on *Johnson v. State*, 348 Md. 337, 703 A.2d 1267 (1998), which explained that factors other than chronological age may be considered by the sentencing body when making a youthful age determination, Bryant argues that his chronological age, along with other factors, required the sentencing court to consider the youthful age mitigating circumstance when considering the death sentence in this case. He also argues that because the Legislature used the word "age" in the statute it clearly intended that a defendant who is young in chronological years be given the benefit of the mitigating circumstance. He claims that the use of the word "age" indicates that chronological age should be the most significant factor in the youthful age analysis.

Although claiming that he should receive the benefit of our reasoning in *Johnson*, Bryant alternatively asserts that the Legislature did not intend for the other considerations to negate chronological age as the dominant influence in the analysis. Bryant faults the sentencing court for failing to accord his age any weight in mitigation by simply finding that he was not of "youthful age." His chronological age and troubled home life ought to have been given great weight. The physical abuse he suffered as a child, lack of a father figure, sexual abuse by his caretakers, and failure to complete

high school were all factors that should be taken into consideration in mitigating the punishment. Furthermore, Bryant asserts that his immaturity was demonstrated by the fact that he refused to attend high school regularly, was cast out of his mother's home for failure to observe her rules, he had no financial assets, and he was fired from Burger King for repeatedly failing to show up for work or explain his absences. He claims that this evidence demonstrated that he lacked the "experience, perspective and judgment" expected of adults. *Eddings*, 455 U.S. at 116, 102 S.Ct. at 877, 71 L.Ed.2d at 12. Instead, the court concluded, based on the circumstances of the crime, that Bryant, as the mastermind of the crime, was sufficiently mature so that youthful age was not a mitigating circumstance in his case. Bryant postulates that even with application of the proper standard of review, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational sentencing authority could have concluded that the accused failed to prove the claimed mitigating circumstance by a preponderance of the evidence," *Johnson*, 348 Md. at 354, 703 A.2d at 1276, this Court should conclude that the sentencing court erred by refusing to weigh this evidence against the aggravating circumstance. Bryant concludes that, under the Maryland statute and the Eighth Amendment, the court erred by failing to weigh in mitigation the undisputed fact that Bryant was barely eighteen years old at the time of the crime and in ignoring probative evidence relating to his home life and level of maturity.

The State ripostes that the sentencing court properly considered the youthful age evidence to conclude that it should not be a mitigating circumstance in this case. The State observes that there is nothing in the statute or its history to indicate that the Legislature ever considered circumstances where the youthful age mitigator would apply to an eighteen year old as a matter of law. Additionally, the State points out that this Court has held that "youthful age" means more than chronological age. *Ware v. State*, 360 Md. 650, 694, 759 A.2d 764, 787 (2000) (stating that "[i]t is well settled in Maryland that youthful age as used in this statute includes consider-

ations other than mere chronological age"), *cert denied*, 531 U.S. 1115, 121 S.Ct. 864, 148 L.Ed.2d 776 (2001).

## III.

## *OUR ANALYSIS*

### A.

 Article 27, § 414(e)(3) requires us to determine, when reviewing the imposition of a death sentence, "[w]hether the evidence supports ... the finding that the aggravating circumstances outweigh the mitigating circumstances." When reviewing the trial judge's evaluation of mitigating circumstances, the appropriate standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational sentencing authority could have concluded that the accused failed to prove the claimed mitigating circumstance by a preponderance of the evidence." *Stebbing v. State*, 299 Md. 331, 362, 473 A.2d 903, 918 (1984), *cert denied*, 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984). The preponderance of the evidence test simply requires the trier of fact to "determine[ ] which side outweighs the other, without being concerned with how much or how clearly one side may outweigh the other." *Foster*, 304 Md. at 477, 499 A.2d at 1255–56.

 The appropriateness of a death sentence may not be considered by the sentencing authority unless the State has established the existence of one or more statutory aggravating factors beyond a reasonable doubt. *Baker*, 367 Md. at 677, 790 A.2d at 646. If the State meets its burden of production and "the court or jury finds, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall then consider whether, based upon a preponderance of the evidence, any of the following mitigating circumstances exist." Art. 27, § 413(g). The defense bears the burden of establishing the existence of mitigating circumstances by a preponderance of the evidence. *Stebbing*, 299 Md. at 361, 473 A.2d at 918. Mitigating factors pursuant to § 413(g)(8) are found

when "the sentencing authority perceives anything relating to the defendant or the crime which causes it to believe that death may not be appropriate." *Harris v. State*, 312 Md. 225, 252, 539 A.2d 637, 650 (1988). If mitigating circumstances are established, then the court or jury "shall determine whether, by a preponderance of the evidence, the aggravating circumstances outweigh the mitigating circumstances." The Supreme Court has cautioned the sentencing body that once mitigating circumstances are established, it "may determine the weight to be given relevant mitigating evidence," but "may not give it no weight by excluding it from [its] consideration." *Eddings*, 455 U.S. at 115, 102 S.Ct. at 876–77, 71 L.Ed.2d at 11. The weighing process is to take into account the gravity of the aggravating and mitigating circumstances and is not to be a mere numerical tally of whether there are more aggravating factors than mitigating factors. *Miles v. State*, 365 Md. 488, 561, 781 A.2d 787, 829 (2001), *cert denied*, 534 U.S. 1163, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002). *See, e.g., Thanos v. State*, 330 Md. 77, 83, 622 A.2d 727, 729–30 (1993) (affirming the imposition of a death sentence where the trial court found the existence of a single statutory aggravating factor outweighed six mitigating circumstances).

■ The State shoulders the burden of showing that the aggravating circumstances outweigh the mitigating factors. *White v. State*, 322 Md. 738, 746, 589 A.2d 969, 973 (1991). The weighing process does not require that the mitigating circumstances outweigh the aggravating factors in order to avoid the death sentence; however, if mitigating circumstances exist, the statute contemplates imposition of the sentence of death only when the aggravating circumstances outweigh the mitigating circumstances. § 413(h)(2) and (3). *Miles*, 365 Md. at 549, 781 A.2d at 822–23. *See Maziarz*, 302 Md. at 5–6, 485 A.2d at 247 (holding that the trial court's instruction to the jury, that death is mandated unless the mitigating circumstances are overwhelming, was a gross distortion of the statute mandating that the death sentence be vacated and remanded for new sentencing proceedings); *White*, 322 Md. at 747, 589 A.2d at 973 (following *Maziarz* by

holding that the trial judge, by stating "the question then becomes one of whether the mitigating circumstances and factors outweigh the aggravating circumstances," engaged in an improper weighing process and therefore the death sentence had to be reversed and remanded for new sentencing proceedings). If the competing factors are in equipose, then the death sentence also may not be imposed. *See* § 413(h)(3) ("[i]f it finds that the aggravating circumstances *do not outweigh* the mitigating circumstances, a sentence of death may not be imposed") (emphasis added); *Woodson v. State,* 325 Md. 251, 268, 600 A.2d 420, 428 (1992) (reiterating that the penalty can not be death if the weight of the aggravating circumstances is equal to the weight of the mitigating circumstances). *See also Foster,* 304 Md. at 478–79, 499 A.2d at 1256 (finding that because the State has the burden of persuasion, the death sentence may not be imposed when aggravating and mitigating factors are balanced evenly).

▆▆ There is no indication in the record of the sentencing proceeding in the present case that supports Bryant's complaint that the judge improperly reversed the burden of proof. The only burden assigned the defense was that of establishing the existence of mitigating circumstances by a preponderance of the evidence. The record clearly indicates that the State fully bore the burden of establishing the aggravating circumstance beyond a reasonable doubt and retained the burden of convincing the sentencing body that the aggravating circumstance outweighed the mitigating circumstances by a preponderance of the evidence.

▆▆ Bryant's objection to the manner in which the sentencing judge expressed his weighing of the aggravating and mitigating circumstances is unavailing. The crux of his argument is that by using the words "51 percent" to describe the weighing process the sentencing judge was weighing the circumstances in a rigid and mechanistic way that conflicted with our assessments of how the weighing process ought to be conducted. As we have stated already, the preponderance of the evidence test, as imposed by the Legislature, requires that

one side of the scale outweigh the other "without being concerned with how much or how clearly one side may outweigh the other." *Foster*, 304 Md. at 477, 499 A.2d at 1255–56. The 51% reference, in our view, does not indicate a mere numerical tally of mitigating and aggravating factors to determine which was greater in number. In fact, a determination of death driven by simple mathematics would not be possible in this case as the court only found one aggravating circumstance (that Bryant committed the murder while attempting to commit armed carjacking) versus two mitigating circumstances (that Bryant previously has not been found guilty of a crime of violence and that he was not the sole proximate cause of the victim's death). Rather, we view the use of "51 percent" by the sentencing judge as merely illustrative of the slight tilt to one side of the scale that is required to find that that side outweighs the other in a preponderance of the evidence analysis. The sentencing judge did not err in this regard.

 Bryant asserts that the sentencing judge was required to weigh all *proffered* mitigating circumstances, statutory and non-statutory, in order to comply with the Eight Amendment to the U.S. Constitution. His reliance on *Eddings* and the other cited Supreme Court cases, however, is misplaced. The *Eddings* Court required that, in capital cases, the sentencer not be precluded from considering any aspect of a defendant's character or record and any circumstances of the offense proffered as a basis for a sentence less than death. 455 U.S. at 110, 102 S.Ct. at 874, 71 L.Ed.2d at 8. The Supreme Court noted in *Payne v. Tennessee*, however, that the States retain their traditional discretion in determining "substantive factors relevant to the penalty determination." 501 U.S. 808, 824, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720, 734–35 (1991). We stated in *Johnson* that the rule established in *Eddings* "was not a talisman for the automatic admission of evidence when proffered by a defendant." *Johnson v. State*, 303 Md. at 519, 527, 495 A.2d 1, 21 (1985), *cert denied* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). We have reiterated recently our belief that the preponderance of the evidence

test required by § 413(g) for determining the existence of mitigating circumstances complies with the Eighth and Fourteenth Amendments to the U.S. Constitution. *Miles,* 365 Md. at 557–58, 781 A.2d at 827 (2001); *Collins v. State,* 318 Md. 269, 296, 568 A.2d 1, 14, *cert denied* 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990). *See Gilliam v. State,* 320 Md. 637, 672–73, 579 A.2d 744, 761 (1990) (upholding the sentencing judge's determination that no mitigating circumstances existed although the defense proffered certain statutory and non-statutory mitigating circumstances). Because the preponderance of the evidence test in this regard passes constitutional muster, Bryant's arguments in this regard are unavailing.

◼️ Bryant's arguments also fail with respect to the statutory mitigating factor of future dangerousness and the non-statutory factors of his alleged drug-use and post-traumatic stress disorder, lack of an adult criminal record, and the disproportionality of the maximum sentences to which he and Lawson were exposed. Mitigating factors include either those considerations enumerated by statute, § 413(g), or "anything relating to the defendant or the crime which causes [the sentencing body] to believe that death may not be appropriate." § 413(g)(8). The sentencing court refused to consider the asserted mitigator of disproportionate sentences because the statutory scheme clearly established which defendants, tried as adults, are death-eligible. The statute provided that the maximum penalty available for persons under the age of eighteen at the time the crime was committed is life without parole. Lawson was therefore not death-eligible for his participation in the crime, but Bryant was. This Court held in *Johnson,* 303 Md. at 519, 495 A.2d at 17, that the sentencing authority has broad discretion to consider the disproportionate sentence of a co-defendant as a mitigator under § 413(g)(8), but there is no legislative requirement it do so. In *Johnson,* we found it not to be a mitigating circumstance when Johnson's co-defendant, Mayers, was sentenced to life imprisonment for his role in torturing and murdering the victim, but Johnson was given the death penalty for his participation. *Id.* In that case there was no statutory basis for the differential

sentencing treatment between the co-defendants. The fact that Lawson was not death-eligible and Bryant was death-eligible is not a factor bearing on the crime or on the defendants in such a way as to compel capping Bryant's potential sentencing exposure. The decision of the sentencing court not to recognize the disparate result as a mitigator was therefore within the proper exercise of its discretion.

As to Bryant's lack of a prior adult criminal record, the court indicated in its ruling that the defense presented evidence establishing the existence of the statutory mitigating circumstance contained in § 413(g)(1)(i), "the defendant has not previously been found guilty of a crime of violence." Bryant contends, however, that he was not trying merely to establish the statutory mitigator, but also was establishing a non-statutory mitigator. The record indicates that, although the court found the defense's evidence appropriate to support the existence of the § 413(g)(1)(i) factor, the court also observed that "many of those who are eighteen years of age would not have any prior criminal record." This indicates that the judge considered the proffered mitigator as both a statutory and non-statutory circumstance and accepted it as to the former, but rejected it as to the latter. The court found it to be irrelevant as a non-statutory circumstance because Bryant had achieved the age of majority only five months before the crime and therefore the lack of an adult criminal record was of no particular moment. The court did not err in this ruling.

The sentencing court also was unpersuaded that either Bryant's alleged post-traumatic stress syndrome or his alleged drug and alcohol addiction impacted his actions on the day of the murder, and therefore did not find those mitigating circumstances to exist by a preponderance of the evidence. The record does not reflect evidence tending to prove that Bryant was suffering from post-traumatic stress at the time of the murder or that he was under the influence of drugs or alcohol at the time. Dr. Janice Stevenson testified as to the events in Bryant's life that could have caused him to suffer from post-traumatic stress syndrome, but the defense failed to

present any evidence indicating that Bryant in fact did suffer from this syndrome. Likewise, Dr. Stevenson testified that she believed Bryant was addicted to drugs and alcohol, but the defense failed to provide any evidence indicating that Bryant's actions on the night of the murder were influenced by either drugs or alcohol. Moreover, because of Bryant's leadership role in planning and carrying out the crime, the court reasoned that Bryant's criminal conduct was contrary to the symptomology of the proffered afflictions, i.e., general fright and fear of others. The sentencing judge therefore did not abuse his discretion in finding that these proffered non-statutory mitigating circumstances were not proven to exist by a preponderance of the evidence.

As to the sentencing judge's failure to find lack of future dangerousness to be a mitigating circumstance, § 413(g)(7) states that it is a mitigator if the sentencing body finds by a preponderance of the evidence that "[i]t is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society." Bryant relies in part on *Kelly v. South Carolina* and *Simmons v. South Carolina* to bolster his argument that any assessment of future dangerousness requires consideration of the defendant's risk to the prison population exclusively. Bryant, however, misreads the cases to arrive at this conclusion.

The Supreme Court stated in *Simmons v. South Carolina*, 512 U.S. at 163–64, 114 S.Ct. at 2194, 129 L.Ed.2d at 142:

In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant. Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not. Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole. The trial court's refusal to apprise the jury of this information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerous-

ness in its argument to the jury, cannot be reconciled with our well-established precedents interpreting the Due Process Clause.

The defendant in *Simmons* was eligible only for the death penalty or life in prison without the possibility of parole. The Supreme Court's holding, the *Simmons* rule as it came to be known, was that when a capital defendant's future dangerousness properly is at issue, and the only sentencing alternative to death is life imprisonment without the possibility of parole, due process entitles the defendant to inform the jury of his or her parole ineligibility. 512 U.S. at 156, 114 S.Ct. at 2190, 129 L.Ed.2d at 138. The Supreme Court elaborated on this holding in *Kelly v. South Carolina* where it stated that even if the only penalty options available for a defendant are life without parole or the death penalty, future dangerousness is at issue insofar as the defendant poses a threat to his fellow inmates. Noting that Kelly had previously been involved in violent behavior while incarcerated, the Supreme Court held that future dangerousness may be considered in terms of the defendant's threat to society at large or specifically to prison society. 534 U.S. at 254, 122 S.Ct. at 732, 151 L.Ed.2d at 680. These cases do *not* mandate that future dangerousness be assessed in terms only of a defendant's threat to prison society, rather than his threat to society in general, when the defendant is eligible for the death penalty, life imprisonment without the possibility of parole, or life imprisonment with the possibility of parole.

In the matter before us, the defense was required to establish by a preponderance of the evidence that Bryant would not constitute a continuing threat to society as a whole in order to compel the court to consider the proposed mitigating circumstance of future dangerousness. Bryant's reliance on *Bruce* and *Doering* is misplaced. We held in *Bruce* that "[i]n weighing the appropriateness of a death sentence, the jury is entitled to know about the available sentencing alternatives." 318 Md. at 734, 569 A.2d at 1268. *Doering* likewise held that where "the defendant in a capital sentencing proceeding seeks to place before the jury relevant and competent

information concerning his eligibility for parole in the event a life sentence is imposed, that request should be granted." 313 Md. at 412, 545 A.2d at 1295. Neither of these cases mandate that the court evaluate the defendant's risk to the prison population instead of to society as a whole.

In *Stebbing,* the defense argued that lack of future dangerousness was a mitigating circumstance to be weighed at sentencing. We upheld the sentencing court's determination that the defense had not proven by a preponderance of the evidence that Stebbing would not pose a future threat to society. 299 Md. at 369, 473 A.2d at 922. The sentencing court found that Stebbing was convicted for larceny, fleeing, possession of marijuana, and breaking and entering, all while on probation. *Id.* Furthermore, she committed murder after she had been confined at the Women's Reformatory and while a warrant was outstanding against her for violation of probation. 299 Md. at 369–70, 473 A.2d at 922. Based on these findings, and on the violence and duration of her attack on the murder victim, the sentencing judge found that the defense had not established by a preponderance of the evidence that it was unlikely that Stebbing would engage in further criminal activity that would constitute a continuing threat to society. *Id.*

Bryant misunderstands our precedents regarding the mitigating factor of future dangerousness. We stated in *Harris v. State,* 312 Md. 225, 539 A.2d 637, and *Evans v. State,* 304 Md. 487, 499 A.2d 1261 (1985), *cert. denied* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986), that the possibility of parole for a defendant who receives a life sentence is irrelevant to sentencing proceedings when the defense seeks to use that information as evidence that the defendant can not be a future threat to society because he will never be released from prison. We reasoned that "[t]he chief vice of that reference in this case to the possibility of parole is that it suggested to the jury that it might in part shift its responsibility for a finding of the defendant's guilt to some other body." *Poole v. State,* 295 Md. 167, 196, 453 A.2d 1218, 1233 (1983). Noting first that evidence offered by the defense concerning the possibility of

parole is not relevant to the future threat to society mitigator, we observed that "[i]n this connection, it should be pointed out that one might be likely to engage in criminal activity constituting a threat to those around him whether he is confined in a penal institution or is on parole." *Evans,* 304 Md. at 530, 499 A.2d at 1283. Although we recognized that the defendant could constitute a threat to prison society, we have at no point suggested, as Bryant now does, that the sentencing body's assessment of future dangerousness to society be limited in scope strictly to the threat posed to *prison* society. *See, e.g., Thomas v. State,* 301 Md. 294, 348, 483 A.2d 6, 34 (1982) (assessing future dangerousness in terms of society as a whole and hearing evidence on the general psychological attributes that disposed defendant to being such a future threat), *cert denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985). The purpose of the limitation is to ensure that the sentencing authority does not shirk from its responsibility in weighing aggravating and mitigating factors. By recognizing that one sentencing option for Bryant was life imprisonment with the possibility of parole, the judge rationally required evidence of his future threat to society as a whole in order to trigger weighing of the § 413(g)(7) mitigating circumstance. In the absence of any evidence addressing Bryant's future threat to society, a rational judge could find that the defense failed to establish the existence of this statutory mitigating factor by a preponderance of the evidence.

## IV.

 Bryant's final contention is that the sentencing judge erred by refusing to find his age to be a mitigating circumstance. With this contention, we agree. In *Johnson v. State* we addressed whether the trial judge, at sentencing, had erred in using an incorrect definition of the youthful age mitigating circumstance when he ruled that: "[t]aking the phrase 'youthful age' to refer to chronological age, and having considered the case law, I find by a preponderance of the evidence that that circumstance likewise does not exist." 348 Md. at 353, 703 A.2d at 1275. We corrected the sentencing judge and

reiterated that "[t]his Court has clearly rejected a pure chronological age approach when evaluating the youthful age mitigating factor." *Id.* We previously had articulated the scope of youthful age as a mitigating circumstance in *Stebbing:*

> "[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage. Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults. Particularly 'during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment' expected of adults."

*Stebbing,* 299 Md. at 368, 473 A.2d at 921 (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)). *See Ware,* 360 Md. at 694, 759 A.2d at 787 (recognizing that it is "well settled" in Maryland that youthful age as used in § 413(g)(5) includes considerations beyond chronological age). The Supreme Court has defined youthful age in terms including more than chronological age and found that a youthful age evaluation includes consideration of "the background and mental and emotional development of a youthful defendant." *Eddings,* 455 U.S. at 116, 102 S.Ct. at 877, 71 L.Ed.2d at 12. We noted in *Lovell v. State* that youth is equated with juvenility and therefore ends upon maturation. 347 Md. 623, 655–56, 702 A.2d 261, 277 (1997).

In *Stebbing,* we considered criminal conduct, home environment, marital status, degree of maturity, and alcohol and drug abuse as relevant factors in determining whether youthful age should be recognized as a mitigating consideration. 299 Md. at 368–69, 473 A.2d at 922. Stebbing participated in perpetrating the murder and related crimes when she was nineteen years and three months old. Upon review of the death sentence and the sentencing court's refusal to find that youthful age was a mitigating circumstance, this Court held that the defendant's behavior—repeatedly running away from home beginning at sixteen years of age, living with at least one man prior to marriage, and being married for more than seven months at the time of the murder, in addition to finding her

demeanor on the witness stand to be that of a "street-wise individual"—gave adequate basis for the trial court to find that youthful age was not a mitigating circumstance. *Id.*

We found that the jury rationally could have concluded that youthful age was not a mitigating factor in *White v. State*. White was eighteen years and four months of age when he killed the victim. On the basis of White's juvenile record, beginning at the age of thirteen and including four offenses of breaking and entering, purse snatching, and six charges related to one victim, including robbery with a dangerous and deadly weapon, in addition to the fact that he had fathered a son by one of his girlfriends, the jury found that youthful age was not a mitigating circumstance. *White v. State*, 300 Md. 719, 738–39, 481 A.2d 201, 210 (1984), *cert denied*, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985). We ratified this determination.

We found no error in the sentencing judge's determination that the defense had not established youthful age as a circumstance mitigating the death penalty in *Thomas*, 301 Md. at 332–33, 483 A.2d at 26. The defense presented evidence that Thomas had a below normal IQ, had suffered a serious head injury in his early teens, was the product of a broken home, the victim of child abuse, had fathered two children, and had a prior adult conviction for robbery. The defense also presented evidence that Thomas, who was twenty-three years old at the time the murder was committed, had a mental age of fourteen or fifteen years of age. *Id.* We further found that our holding was consistent with *Eddings.*

Our case law to date developing the appropriate scope of analysis in evaluating the "youthful age" mitigator reflects somewhat an understanding of the same tensions evident in the legislative history of § 413(g)(5), which became part of Maryland's capital punishment scheme in 1977. Several proposed amendments to the bill that included § 413(g)(5) and a letter from the Governor's Chief Legislative Officer on the subject exemplify those tensions between the competing interests of giving the sentencing authority discretion to consider

evidence of non-chronological traits and the desire to use chronological age to establish some measure of the mitigating circumstance.

A letter from then Chief Legislative Officer, Thomas J. Peddicord, Jr., addressed to the General Assembly and dated 14 December 1977, stated that, in regard to the Administration-supported version of proposed Senate Bill 374, "[t]here is no reference to the age of 18 or to any other specific age" because "[t]he rationale is that youth is not set at an arbitrary age, and therefore the jury or court should not be bound to any arbitrary age in its determination of mitigation." There were three proposed amendments offered, however, that sought to define youthful age solely in chronological terms. Senator Broadwater proposed the addition of a definition in proposed § 413(e): "The term 'youthful age' means a person under the age of 22 years of age at the time of the conviction." Senators Douglass and Bishop proposed that the language, "in this paragraph 'youthful age' means any person 22 years of age or younger," be inserted in § 413(g). Senator Mitchell offered the addition of language defining "youthful age" to mean "any person 25 years or younger." The failure of these amendments, coupled with the ultimate language of § 413(g)(5) as adopted, indicates a legislative preference to allow the sentencing body some discretion in determining youthfulness without the inflexible limitations of a strict chronological age standard. Of note to our consideration here of this background, however, is the fact that the restriction on imposing the death penalty to persons under the age of eighteen was not added to the statutory scheme until ten years later. See n. 14, *infra.*

The tension between the competing considerations is also reflected in the pertinent statutes and cases of other jurisdictions, but with somewhat different results than adopted in Maryland. The federal Fifth Circuit Court of Appeals addressed this issue in *Graham v. Collins,* 950 F.2d 1009 (5th Cir.1992), *aff'd* 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993). That court, interpreting Texas law, rejected the contention that a twenty-two year old defendant could not be

considered youthful for purposes of mitigating the punishment. The court looked to chronological age as an indicator of maturity and stated that people in their twenties, according to Texas case law, are considered to be youthful for mitigation purposes. 950 F.2d at 1030 n. 25. The court observed that "inexperience with resultant diminished judgment and self-control" were the "salient factors" making youth mitigating and noted that those factors were generally present among those in their early twenties, "albeit to a lesser degree than in those still younger." *Id.*[13]

The Supreme Court of Arkansas likewise recognized the particular importance of chronological age in determining youthfulness, stating that although "chronological age does not necessarily control in the jury's determination whether a defendant's youth is a mitigating circumstance, nevertheless, it is certainly an important factor." *Giles v. Arkansas*, 261 Ark. 413, 549 S.W.2d 479, 483 (1977). The court further stated that "[a]ny hard and fast rule would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances.... One of these factors may have greater significance than the others in some cases, depending upon the circumstances." *Id.* At the time *Giles* was decided and at present, Arkansas has no statute or common law rule establishing a minimum age for imposition of the death penalty.

The Supreme Court of New Jersey found that determinations of youthful age require consideration of both chronological age and other indicators of maturity, but stated that "juries should give greater weight to a defendant's chronological age." *New Jersey v. Bey*, 129 N.J. 557, 610 A.2d 814, 818 (1992). Furthermore, New Jersey case law recognizes the age of the defendant as a mitigating factor "only when the defendant is relatively young, or when the defendant is relatively

---

13. Texas Penal Code, § 8.07(c) (1991 Repl.Vol., 1992 Supp.) ("Age Affecting Criminal Responsibility") provides that "[n]o person may, in any case, be punished by death for an offense committed while he was younger than 17 years." This statute remains in force today.

old." *New Jersey v. Ramseur,* 106 N.J. 123, 524 A.2d 188, 275 (1987) (finding that age was not a mitigating circumstance when the defendant was forty-two years old). Like Arkansas, New Jersey does not provide by statute or case law a baseline age below which death may not be imposed.

The Supreme Court of Florida has addressed the scope of youth as a mitigating factor in some depth. In *Foster v. Florida,* 778 So.2d 906 (Fla.2000), the defendant asserted that the sentencing order did not support his death sentence because the trial court failed to provide grounds for rejecting his age, eighteen at the time of the crime, as a mitigator. 778 So.2d at 919. The Supreme Court of Florida stated that although the Florida statute includes the age of the defendant at the time of the crime as a mitigating circumstance, "there is no bright-line rule for applying this provision." 778 So.2d at 920. The Florida court found that the "appropriate application of this mitigator goes well beyond the mere consideration of the defendant's chronological age," and rather "entails an analysis of factors, which, when placed against the chronological age of the defendant, might reveal a much more immature individual than the age might have initially indicated." *Id.* The court therefore used chronological age as an initial indication of maturity, or the lack thereof, in the absence of other evidence. In *Hurst v. Florida,* 819 So.2d 689 (Fla.2002), the Florida high court reiterated that there is no "per se rule" pinpointing a particular age as an automatic circumstance in mitigation. 819 So.2d at 698. The court elaborated, however, that in order "to give a non-minor defendant's age *significant weight* as a mitigating circumstance, the defendant's age must be linked with some other characteristic of the defendant or the crime, such as significant emotional immaturity or mental problems." *Id.* The *Hurst* court concluded that, in the absence of significant evidence presented to demonstrate Hurst's particular immaturity or mental problems, the trial court did not abuse its discretion in assigning his age "very little weight" as a mitigating circumstance. *Id.*

In its most recent pronouncement on the point, *Bell v. Florida,* 841 So.2d 329, 336, 2002 Fla. LEXIS 2381 *17 (2002),

the Supreme Court of Florida held that the sentencing court erred by assigning little weight to defendant's age as a mitigating circumstance. Bell was seventeen years and ten months old at the time the crime was committed.[14] Although the sentencing court may exercise discretion in assigning weight to each mitigating factor, the court stated that "the closer the defendant is to the age where the death penalty is constitutionally barred, the weightier the mitigator becomes." 841 So.2d at 335, 2002 Fla. LEXIS 2381, *14 (quoting *Urbin v. Florida,* 714 So.2d 411, 418 (Fla.1998)). The *Bell* court further stated in support of its position:

> Whenever a murder is committed by one who at the time was a minor, the mitigating factor of age must be found and weighed, but the weight can be diminished by other evidence showing unusual maturity. It is the assignment of weight that falls within the trial court's discretion in such cases.... Thus, the trial court must afford the mitigating factor of age "full" weight unless the trial court makes a finding of unusual maturity that the trial court can exercise discretion in assigning diminished weight to the mitigator.

841 So.2d at 335, 2002 Fla. LEXIS 2381, *14–15.

We do not repudiate here the general reasoning in our prior cases that, where a chronologically youthful defendant is involved, evidence of non-chronological factors may be relevant to a capital defendant's level of maturity and experience at the time of the crime; however, we now hold that the closer his or her chronological age is to the eighteen year old baseline established in § 412(g), such factor alone tends to support the establishment of immaturity and inexperience and, hence, triggers the need to consider youthful age as a mitigator. Thus, youthful age as a mitigating circumstance is determined, in the first instance, by the chronological age of the defendant, abiding evidence of atypical or unusual maturi-

---

14. The Supreme Court of Florida has determined that the death penalty is cruel and unusual if imposed on a defendant under the age of seventeen. *Brennan v. State,* 754 So.2d 1, 7 (Fla.1999).

ty and experience that bears on the weight to be accorded that mitigator in the ultimate weighing.

The structure of the current statutory scheme compels that age be a preeminent factor, but the legislative history indicates it is not the only factor to be taken into consideration when weighing "youthful age." Under this analysis, the weight given youthful age as a mitigator would diminish in proportion to the weight assigned any evidence of other relevant factors bearing on greater maturity and life experiences, to the point that little weight may be given to youthful age in the weighing. As the defendant's age at the time of the crime is further removed from the baseline of eighteen years, it even may not trigger consideration of the mitigator at all. When the defendant is barely above the § 412(g) baseline, however, youthful age should be found as a mitigating circumstance, although the sentencing body may give it little weight due to the other factors, if present. This approach, though a recalibration of the calculus articulated in our prior cases, is not wholly inconsistent with our earlier case law.[15]

---

**15.** As an interesting aside, a somewhat analogous example of the sliding scale approach has been proposed by Professor Barry C. Feld in the context of reform of the juvenile justice system. Professor Feld advocates abolition of the juvenile court system and suggests that juveniles be tried in adult court. He favors a "youth discount" to be applied at the sentencing phase that would explicitly account for the factor of juvenility. Feld cites to an American Bar Association publication, *Juvenile Justice Standards Relating to Dispositions* (1980), that emphasized the relationship between age and sanctions—"The age of the juvenile is also relevant to the determination of the seriousness of his or her behavior. In most cases, the older the juvenile, the greater is his or her responsibility for breaking the law." The appropriate way to integrate the offender's youthful age is through a system permitting discounts corresponding to strict chronological age so that, for example, a fourteen year old offender would receive 25–33 percent of the full penalty and a seventeen year old offender would receive 60–75 percent of the full penalty. Feld's proposition for reform has received a degree of acceptance among other scholars and youth sentencing policy groups. *See, e.g.,* David S. Tanenhaus & Steven A. Drizin, *"Owing to the Extreme Youth of the Accused": The Changing Legal Response to Juvenile Homicide*, 92 J.Crim. L. & Criminology 641 (Spring/Summer 2002); Christina DeJong & Eve Schwitzer Merrill, *Getting "Tough on Crime": Juvenile Waiver and the Criminal Court*, 27 Ohio N.U.L.Rev. 175 (2001).

*Stebbing, White,* and *Thomas* are examples of how the chronological ages of the defendants were weighed against the other factors going to youthfulness to determine whether youthful age was an appropriate mitigating circumstance to be considered.[16] Stebbing was a defendant who was youthful in terms of chronological age, nineteen years of age, but her life experiences made her mature beyond her years. White was of youthful age in chronological terms, eighteen years and four months at the time of the crime, but had a criminal record and life experiences that were found to have endowed him with a level of maturity negating his chronological age. Youthful age in White's case was found not to be a mitigating circumstance. *Thomas* was a case where the defendant's chronological age, twenty-three years, when combined with the other proffered factors, failed to present enough evidence to support finding youthful age as a factor mitigating punishment. There the chronological age merited little weight and the other evidence of immaturity was also of little moment.

*Ware* and *Lovell* likewise are not inconsistent with the calculus for evaluating the youthful age mitigating circumstance announced here. Although *Ware* touched on the youthful age mitigating factor, we ultimately disposed of that issue on waiver grounds finding that the asserted error of the trial judge in failing to give a supplementary instruction as to the meaning of the term "youthful age" had not been properly preserved for appellate review. 360 Md. at 692, 759 A.2d at 786. We stated that "[i]t is well settled in Maryland that youthful age as used in this statute includes considerations other than mere chronological age, but instructions on mitigating circumstances for purposes of capital sentencing proceedings are not excepted from the general rule that a party must

---

**16.** These cases are distinguishable from Bryant's case because at the time they were decided, *Stebbing* and *White* in 1984, and *Thomas* in 1982, the § 412(g) provision prohibiting persons under the age of eighteen from receiving the death penalty had not been enacted. It was added to our capital punishment scheme by ch. 626 of the Acts of 1987. Despite this difference, these cases reflect a proportional weighing process of continuing relevance to the approach announced in the present case.

request a specific instruction before a court is required to give it." 360 Md. at 694, 759 A.2d at 787. Nonetheless, we continued that, had the issue been preserved for review, the closing arguments of the State and defense counsel sufficiently made clear that "the jury was not misled into believing that the statutory mitigator of youthful age was limited to chronological age only." *Id.* We cited to the State's closing argument where it conceded that "the defendant's age of twenty-two 'is not extremely old or very old in terms of chronological age,'" but further described Ware's maturity in non-chronological terms as well by discussing his actions in Desert Storm and the "cold and calculating nature of the crime." *Id.*

Defense counsel in *Lovell*, in response to a note from the jury requesting clarification of the term "youthful age," asked the court to instruct the jury that "youthful age" applies only to persons eighteen years of age and older. 347 Md. at 654, 702 A.2d at 276. The trial judge refused to give the jury any further guidance. 347 Md. at 655, 702 A.2d at 276. We found that the issue had been preserved for appellate review, stating that, against the legislative history backdrop,

> we have no difficulty in understanding Lovell's counsel to have requested the trial court not only to answer the jury's inquiry by instructing on the factors to be considered in determining youthful age, ... but also to instruct that those factors be considered in relation to the absolute floor established against the prohibition against executing a person who was less than eighteen years of age at the time of the murder.

347 Md. at 656, 702 A.2d at 278. We further explained that in the factual situation apparent in *Lovell*,

> Absent clarification from the trial court, there was a very real risk that the jurors may have erroneously concluded that youthful age is concerned exclusively with the defendant's chronological age, and Lovell was twenty-four years old at the time of the murder. Without having been told that persons younger than age eighteen at the time of the murder cannot be executed, the jury may well have consid-

ered that youthful age was listed in the statute as a mitigating factor to allow for the possibility of a life sentence in cases where the death penalty is sought against a person who was age seventeen, or age sixteen, or possibly younger when committing the murder. The result may well have been that the jury miscalibrated on the low side the floor or minimum age at which the mitigating factor begins possible operation.

347 Md. at 659–60, 702 A.2d at 279. The principles expanded upon in our holding in this case merely refocus those enunciated in *Ware* and *Lovell*.

As previously noted in n. 16, *supra*, at the time *Stebbing*, *White*, and *Thomas* were decided, a person who was seventeen at the time the crime was committed was eligible for the sentence of death in Maryland. At no time during that period, however, did we hold that such a person was not of youthful age for purposes of the relevant mitigating circumstance. Since those cases were decided, the Legislature provided that a person may not be sentenced to death if he or she was under the age of eighteen when the crime was committed. An analogous situation today would be if we were to hold that, as a matter of law, a person nineteen years old when the crime was committed was not of youthful age. Nevertheless, it seems clear to us that an eighteen year old, now the youngest age at which a person is death eligible in this State, is of youthful age for purposes of having the particular mitigating circumstance considered.

Against the backdrop of the addition of § 412(g) in 1987 and the failure in 1977 of the proposed amendments to or affecting § 412(g)(5), youthful age should be considered as a mitigating circumstance for those death-eligible defendants who have not attained the age of nineteen as of the date of the crime. The youthful age mitigating circumstance is intended to mitigate the punishment of persons eighteen years of age and above, but who still lack the maturity of adults. Logic indicates that a person not yet nineteen years old is of youthful age as that term should be understood in the statutory scheme.

Bryant had not attained the age of nineteen years old when he committed the crimes in this case. We hold, as a matter of law, that a defendant who has not attained the age of nineteen as of the date of the crime(s) is entitled to have the youthful age mitigator considered, albeit the weight given it may be attenuated, depending on the presence of non-chronological factors.

Non-chronological factors indicating unusual maturity or experience may be evaluated to assign weight to the mitigator in the ultimate balancing judgment. Thus, the court at the new sentencing proceedings is free to exercise its discretion to determine how much weight that mitigating circumstance merits based on the evidence before it relating to the non-chronological factors bearing on Bryant's level of maturity and experience at the time of the crimes.

*JUDGMENT AFFIRMED EXCEPT AS TO THE IMPO-SITION OF THE DEATH SENTENCE; DEATH SEN-TENCE VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR A NEW SENTENCING PROCEEDING. COSTS TO BE PAID BY BALTIMORE COUNTY.*

Court of Appeals of Maryland.